

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 28, 2016**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| RICHARD GENE GNAHOUA, | § | Case No.: 14-50222-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| RICHARD GENE GNAHOUA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 14-05020 |
| | § | |
| DEPARTMENT OF EDUCATION and | § | |
| KEY BANK, NA, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Plaintiff, Richard Gnahoua, seeks a discharge of his student loan indebtedness, under 11 U.S.C. § 523(a)(8), owed to the United States Department of Education (DOE). The DOE here

moves for summary judgment, claiming that Gnahoua fails to meet the "undue hardship" requirements established in *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987), and applicable in this circuit by *U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89 (5th Cir. 2003); and thus Plaintiff's complaint fails as a matter of law.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

After reviewing the motion, Gnahoua's response, and the summary judgment evidence, the Court grants DOE's motion.

## BACKGROUND

Richard Gnahoua attended Texas Tech University for eight-and-a-half years in pursuit of a Doctorate Degree in Mechanical Engineering.[1] He completed all of his classes but was unable to defend his thesis. Doc. No. 33, Ex. A at 00004-05. The school expelled him in October of 2014. *Id.* He filed for chapter 7 bankruptcy that same month (Case No. 14-50222) and filed this adversary against the DOE two months later. As of September 29, 2015, Gnahoua owes a total debt to the DOE, from thirty-eight separate loans, of $168,984.91. *Id.*, Ex. C at 00030. Interest on the loans accrues at $28.55 per day. *Id.* He has made no payments on the loans, *id.*, and presented no evidence of any inquiry into forbearance, deferment, or an income-contingent repayment program.

Gnahoua is unemployed. *Id.*, Ex. A at 00013. He holds a degree from Cote d'Ivoire, Africa that is similar to a Bachelors Degree in Electrical Engineering. *Id.* at 00002-03. He has previous work experience in a grocery store and as a teacher at a community college. *Id.* at 00017, 00014. Since leaving Texas Tech, he has "looked everywhere" for a job—without any success. *Id.* at

---

[1] Gnahoua also took classes during this time at Prairie View A&M.

00013-14. Currently, he has his eyes set on obtaining his Commercial Driver's License (CDL), but he lacks the resources to take the required training. *Id.* at 00015.

At this point, he doesn't want to work unless he gets a "job that would give [him] a big salary, [then] yeah, [he'll] take it." *Id.* at 00017. He thinks he should not have to pay back any of his student loans because he never graduated and thus never profited from his education. *Id.* at 00010. If anybody should have to pay back these loans, Gnahoua argues, it should be Texas Tech because it "created the situation he is in."[2] *Richard Gnahoua's Responses to Summary Judgment Brief in Support of Motion to Discharge*, Doc. No. 41.

## DISCUSSION

Summary judgment is appropriate where the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] The burden is on the movant; where, like here, the nonmovant bears the burden of proof at trial, the movant must either point out the absence of evidence or undermine evidence of the nonmovant that is essential to one or more elements of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If successful, the burden then shifts to the nonmovant to establish a genuine issue as to a material fact. *Id.* at 324. A genuine issue exists when, through evidence offered by the nonmovant, a rational fact finder could, at trial, find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This requires something more than conclusory allegations, improbable inferences, unsupported speculation, or metaphysical doubt. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993). A court must draw all *reasonable*

---

[2] The University should not only pay his debt, he continued, but also compensate him for his ten-year loss and recovery. *Id.* at 2.

[3] The rule is applicable to adversary proceedings in the bankruptcy court pursuant to the Federal Rule of Bankruptcy Procedure 7056.

inferences in favor of the nonmovant, which in this case is the Plaintiff. *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

Section 523(a)(8) prevents the inclusion of education loans in a § 727 discharge "unless excepting such debt from discharge would impose an 'undue hardship' on the debtor and the debtor's dependents." *Russ v. Tex. Guaranteed Student Loan Corp. (In re Russ)*, 365 B.R. 640, 644 (Bankr. N.D. Tex. 2007). Traditionally, education loans were discharged along with other unsecured prepetition debts. Richard B. Keeton, *Guaranteed to Work or It's Free!: The Evolution of Student Loan Discharge in Bankruptcy and the Ninth Circuit's Ruling in Hedlund v. Educational Resources Institute Inc.*, 89 Am. Bankr. L.J. 65, 74 (2015). Concern over student-loan-discharge abuse by newly graduated doctors and lawyers motivated Congress to pass the Education Amendments Act in 1976, which, absent "undue hardship," barred discharge of a federally guaranteed student loan obtained within five years of a bankruptcy filing. *Id.* at 75. Such provision became a part of the Bankruptcy Code with the Bankruptcy Reform Act of 1978. *Id.* Over the years, the loans applicable to this nondischargeability provision grew until the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 finally incorporated *all* qualified educational loans—public and private—into this provision. *Id.* Student loans, as with the other eighteen exceptions to discharge in § 523(a), "reflect a conclusion on the part of Congress that the creditors' interest in recovering full payment of debts in these categories outweigh[s] the debtors' interest in a complete fresh start." *Cohen v. de la Cruz*, 523 U.S. 213, 222 (1998) (quotation and citation omitted).

The courts' struggles with this provision stem from the Bankruptcy Code's failure to define "undue hardship." *See, e.g., Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner),* 46 B.R. 752, 753 (S.D.N.Y. 1985), *aff'd*, 831 F.2d 395 (2d Cir. 1987). The courts agree, however, that Congress intended something greater than "garden-variety hardship." *Id.* Various tests have thus

been developed to gauge undue hardship, with most adopting the test from *In re Brunner*—the Fifth Circuit included. *See U.S. Dep't of Educ. v. Gerhardt* (*In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003) ("Because the Second Circuit presented a workable approach to evaluating the 'undue hardship' determination, this court expressly adopts the *Brunner* test for purposes of evaluating a Section 523(a)(8) decision.").

The test from *Brunner* requires a three-part showing from the debtor:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* (quoting *Brunner*, 831 F.2d at 396). The test is conjunctive; a debtor's failure to satisfy any of the prongs means the debtor cannot establish that the student loans are an undue burden. *Harmon v. Educ. Credit Mgmt. Corp. (In re Harmon)*, No. 04-05009, 2005 WL 6443617, at *2 (Bankr. N.D. Tex. Aug. 11, 2005).

The DOE focused its arguments on prongs two and three; the Court need only address the third prong: the debtor's good faith effort to repay the loan. While there are many factors courts use to determine good faith under the *Brunner* test, the overarching inquiry is whether the debtor's default is the result of factors beyond his control. *O'Donohoe v. Panhandle-Plains Higher Educ. Auth.* (*In re O'Donohoe)*, No. 12-03281, 2013 WL 2905275, at *5 (Bankr. S.D. Tex. June 13, 2013); *Educ. Credit Mgmt. Corp. v. Young*, 376 B.R. 795, 799 (E.D. Tex. 2007). This prong "was created with the legislative intent of preventing intentional abusers from filing bankruptcy immediately after graduation while not making a good faith effort to find employment or make payments on their loan obligations." Keeton, *supra*, 89 Am. Bankr. L.J. at 82. The prong has evolved to reject any attempts at discharge where the debtor has "willfully or negligently cause[d] his own default." *O'Donohoe*, 2013 WL 2905275, at *5. Specifically, courts look at: (1) the

attempts by the debtor to maximize income through employment while minimizing expenses; and (2) the number of payments the debtor has made on the loan combined with any attempts by the debtor to negotiate forbearance, deferral, or an income-contingent repayment program. *In re Russ*, 365 B.R. at 645–46.

The line-drawing on these factors is best achieved through example. For instance, the debtor in *McMullin v. U.S. Dep't of Educ.* (*In re McMullin)*, 316 B.R. 70, 79 (Bankr. E.D. La. 2004), satisfied the income maximization prong, while the debtor in *Educ. Credit Mgmt. Corp. v. Young*, 376 B.R. 795, 800 (E.D. Tex. 2007), did not. McMullin, the debtor, earned his MBA in Organizational Development in 1988. *In re McMullin*, 316 B.R. at 73. Soon thereafter he ruptured a disc in his back, which led to degenerative disc disorder that often confined him to a wheelchair, along with a host of other health issues that ailed him: morbid obesity, sleep apnea, bipolar disorder, and hypertension. *Id.* at 76–77. Still, he held down a job as a truck driver while searching for a job in his specialized field of training. *Id.* at 79. The court found that McMullin had made good faith efforts by pursuing "the best employment option available to him." *Id.* at 81. Conversely, Young earned a law degree from SMU but was unable, after "diligently" seeking, to find work as an attorney. *Young*, 376 B.R. at 798. He took a job with LexisNexis writing case summaries, and he did quite well there, winning employee of the year in his 500-person department. *Id*. The court found that he failed to maximize his earnings, however, because he did not obtain his Texas license to practice law. *Id.* at 800.

Gnahoua's efforts have not reached the level of either McMullin or Young. He has been unemployed since Texas Tech dismissed him and has offered no evidence of any attempts to find employment. Gnahoua offered no evidence of a physical or mental disability that prevents him from obtaining gainful employment. He holds an undergraduate degree and has spent several years in a graduate-level engineering program. Despite this background of knowledge, he presented no

Page 6

concrete evidence of attempts made to obtain meaningful employment. Gnahoua has not shown a good faith effort to maximize his earnings.

Gnahoua's good faith effort to repay the debt is no different. Again, examples from other cases are helpful. In *O'Donohoe*, the debtor was able to satisfy the good faith repayment test by making 141 payments on the loan, being proactive in contacting the loan servicer regarding forbearance during times of unemployment, and exploring affordable modification or repayment programs. 2013 WL 2905275, at *6. The court concluded the debtor "has demonstrated that he has taken his loan obligations seriously and has made significant payments toward the Loan." *Id.* At the other end of the spectrum is the case of *Salyer v. Sallie Mae Serv'ing Corp.* (*In re Salyer*), 348 B.R. 66, 73 (Bankr. M.D. La. 2006), which failed this prong. There, the debtors did not make a single payment on their loans or even apply for an income-contingent repayment plan. *Id.*

Gnahoua falls into the latter category. He filed for bankruptcy the same month he was dismissed from school—without making a single payment, without any attempt at negotiating forbearance or a deferral, and without applying for an income-contingent repayment plan, of which he would almost certainly qualify. *See* 34 C.F.R. §§ 682.215(b)(1) and 685.209(c)(3). Gnahoua has made *no effort* to repay the debt and thus fails to establish his good faith.

### CONCLUSION

DOE met its burden by proving the absence of an essential element of the Plaintiff's claim. Plaintiff has not met his burden to create a genuine issue of material fact: no rational fact finder could conclude that Gnahoua has made a good faith effort to repay his loans. DOE's motion for summary judgment will be granted. Counsel for DOE shall submit a judgment granting its motion for summary judgment.

### End of Memorandum Opinion ###